**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| | ) | |
| JON EDDA CURLEY, | ) | |
| | ) | Case No. 2:16-cv-468 |
| Plaintiff, | ) | |
| | ) | JUDGE WATSON |
| vs. | ) | MAGISTRATE JUDGE KEMP |
| | ) | |
| MANLEY DEAS & KOCHALSKI, LLC, | ) | |
| | ) | **AMENDED COMPLAINT** |
| Defendant. | ) | |
| | ) | |

Plaintiff Jon Edda Curly states her Amended Complaint as follows:

<u>JURISDICTION</u>

1.    This case was removed from the Franklin County Common Pleas Court by Defendant

Manley Deas & Kochalski, as Ms. Curley's claim is for violation of the Fair Debt

Collection Practices Act, a federal act.

<u>PARTIES</u>

2.    Ms. Curley is a natural person residing in Columbus, Franklin County, Ohio.

3.    Defendant is a limited liability company engaged in the business of collecting debts. Upon

information and belief: Defendant regularly attempts to collect consumer debts alleged to

be due another; and Defendant collects debts of another as a matter of course.

4.    At all times relevant, Defendant was a "debt collector" as defined by the Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. 1692a(6).

<u>FHA BACKGROUND</u>

5.    The Federal Housing Administration ("FHA") was created by the National Housing Act of

1934 ("NHA").

6. The Secretary of Housing and Urban Development ("HUD") is authorized under the NHA to insure eligible mortgages. *See* 12 U.S.C. 1709(a).

7. Pursuant to its authority under the NHA, HUD has issued rules and regulations in regard to servicing and foreclosing on mortgages which it insures. One purpose of this regulatory scheme is to give financially distressed mortgagors an opportunity to avoid foreclosure and retain their homes through loss mitigation initiatives.

8. Servicing responsibilities for lenders and servicers of HUD/FHA insured mortgages are codified as 24 C.F.R. 203, Subpart C (24 C.F.R. 203.500 - 203.681).

<u>FACTS</u>

9. On March 16, 2006, Mary Richardson executed a note in favor of Taylor, Bean & Whitaker Mortgage Corp. *See* Exhibit 1 (Note).

10. On that same day, Ms. Richardson also gave a mortgage to Taylor, Bean & Whitaker Mortgage Corp. *See* Exhibit 2 (Mortgage).

11. The note and mortgage relate to the residential property located at 2486 Atwood Terrace, Columbus, Ohio, 43211. *See* Exhibit 2.

12. The note and mortgage in question were entered into under, and insured by, the FHA program, administered by HUD, which provides mortgage insurance to cover any losses incurred by the mortgagee/assignee in the event of default and foreclosure. *See* Exhibits 1 and 2.

13. On August 27, 2012, Ms. Richardson signed an affidavit that would transfer this property to her daughter, Plaintiff Jon Edda Curley upon Ms. Richardson's death. *See* Exhibit 3

–2–

(Transfer on Death Affidavit).

14.    Ms. Richardson, passed away on October 17, 2012, and the property then passed to Ms. Curley, making her owner of the property in fee simple. *See* Exhibit 4 (Affidavit of Confirmation of Surviving Beneficiary).

15.    Ms. Curley lives in, and uses the property as her personal residence.

16.    Defendant Manley Deas & Kochalski, on behalf of Wells Fargo Bank ("Wells Fargo"), brought an action against Ms. Curley for foreclosure based on this note and mortgage in the Franklin County Court of Common Pleas ("FCCCP") on July 3, 2013. (case #13CV007333)

17.    Ms. Curley argued, in case #13CV007333, that Wells Fargo failed to conduct a face-to-face meeting with her, and failed to send her the notices required by the FHA regulations.

18.    FCCCP issued a Final Judgment Entry in case #13CV007333 on February 10, 2015, stating, (1) "as a matter of law [Ms. Curley] is a 'mortgagor' for purposes of the regulations encompassed in 24 C.F.R. §203.602 and 24 C.F.R. §203.604"; (2) Wells Fargo must abide by the FHA loss mitigation procedures; (3) none of the exceptions to the face-to-face meeting requirement apply; and (4) Wells Fargo failed to conduct a face-to-face meeting or make a reasonable attempt to do so. *See* Exhibit 5 (Decision and Final Judgment Entry from FCCCP in case #13CV007333).

19.    Wells Fargo has not had a face-to-face meeting with Ms. Curley as intended by 24 C.F.R. §203.604.

20.    Wells Fargo failed to send the notices required by the FHA regulations to Ms. Curley.

–3–

21. Wells Fargo has not sent any notices addressed to Ms. Curley in her name.

22. Defendant then filed a second foreclosure action against Ms. Curley on behalf of Wells Fargo. (FCCCP case #15CV003904). Despite being on notice of the previous foreclosure judgment, and being aware that Wells Fargo had not sent any notices to Ms. Curly, based on litigating the previous case, Defendant again stated that Wells Fargo had met the "conditions precedent" to foreclosure. *See* Exhibit 6, ¶5 (Complaint filed by Defendant in FCCCP case #15CV003904).

23. Case #15CV003904 is currently pending before the FCCCP, awaiting decision on cross motions for Summary Judgment, although the parties have agreed to a settlement in principle.

## FIRST CLAIM

24. Defendant was counsel of record in both foreclosure actions filed against Ms. Curley (FCCCP case #13CV007333, and #15CV003904.) As such, Defendant was aware of FCCCP's decision in case #13CV007333, and was aware that no notices were ever sent addressed to Ms. Curley.

25. Defendant violated the FDCPA (15 U.S.C. 1692e, and 15 U.S.C. 1692f) by filing case #15CV003904, claiming that "conditions precedent" had been met, and that the entire amount of the note was due and owing.

26. The actions of Defendant were false, deceptive, misleading, and unfair.

27. As a result of the above violations of the FDCPA, 15 U.S.C. 1692, Ms. Curley has suffered damages.

–4–

WHEREFORE, Defendant prays that this Court:

A.      Grant judgment against Defendant for statutory damages pursuant to 15 U.S.C.

1692k.

B.      Grant Ms. Curley's costs including attorney fees pursuant to 15 U.S.C. 1692k, and

as otherwise authorized by law.

C.      Award such other relief this court deems fair and just.


Respectfully submitted:

THE LEGAL AID SOCIETY OF COLUMBUS


/s/ Scott Torguson
Scott E. Torguson (0078647)
1108 City Park Avenue
Columbus, OH 43206
614.737.0140
614.224.4514 (fax)
storguson@columbuslegalaid.org
Attorney for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing Amended Complaint was served upon the following persons by uploading to the Court's ECF system, pursuant to Local Rule 5.2(b) and Fed. R. Civ. P. 5(b)(2)(E), this 14th day of July, 2016:

Matthew Richardson
MANLEY DEAS KOCHALSKI
Attorney for Plaintiff

  /s/ Scott Torguson
Scott E. Torguson
Attorney for Plaintiff

# NOTE

FHA CASE NO.
Redacted

March 16, 2006
[Date]

**2486 ATWOOD TERRACE
COLUMBUS, OH 43211**
[Property Address]

**1. PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **Taylor, Bean & Whitaker Mortgage Corp.**

and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of
**Eighty Five Thousand Two Hundred Forty Four and no/100** Dollars
(U.S. $ **85,244.00** ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **Six**

percent ( **6.0000** %) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **May 01, 2006** . Any principal and interest remaining on the first day of **April 2036** will be due on that date, which is called the "Maturity Date."

**(B) Place**

Payment shall be made at **Taylor, Bean & Whitaker Mortgage Corp., 1417 North Magnolia Ave, Ocala, FL 34475**

or at such other place as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S. $ **511.08**
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

MULTISTATE FHA FIXED RATE NOTE

6/96

ITEM T6432L1 (9606R)

*(Page 1 of 3 pages)*

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax 616-791-1131



Redacted

EXHIBIT
1

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Note.

_Mary Richardson_ _____ (Seal)          _____ (Seal)
MARY RICHARDSON                    -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                        -Borrower

*[Sign Original Only]*

Without recourse, pay to the order of

Wells Fargo Bank, N.A.

By: Taylor, Bean & Whitaker
Mortgage Corp.

Erla Carter-Shaw, E.V.P.

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

By _____
William G. Arends
Vice President, Loan Documentation

ITEM T6432IL3 (9606R)          *(Page 3 of 3 pages)*          GREATLAND ▪
To Order Call 1-800-530-9393 ☐Fax 616-791-1131

After Recording Return To:
**TITLEQUEST AGENCY**
**6321 E. LIVINGSTON AVENUE**
**REYNOLDSBURG        , OH        43068**

200603270056687
Pgs: 8   $76.00   T20060022579
03/27/2006 2:00PM BXTITLE QUEST
Robert G. Montgomery
Franklin County Recorder

———————————[Space Above This Line For Recording Data]———————————

# OPEN-END MORTGAGE

FHA CASE NO.
**413-4522639-703**

MIN: 100029500010879785

THIS MORTGAGE ("Security Instrument") is given on **March 16, 2006**
The mortgagor is **MARY L. RICHARDSON, An Unmarried Woman**

("Borrower"). This Security Instrument is given to

Mortgage Electronic Registration Systems, Inc. ("MERS") solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as beneficiary. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **Taylor, Bean & Whitaker Mortgage Corp.**

("Lender") is organized and existing , and

under the laws of **FL**
has an address of **1417 North Magnolia Ave, Ocala, FL 34475**

Borrower owes Lender the principal sum of **Eighty Five Thousand Two Hundred Forty Four and no/100**
Dollars (U.S. $ **85,244.00** ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **April 01, 2036**
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in **Franklin**                                                         County, Ohio:

**See Attached Exhibit A.**

OHIO FHA MORTGAGE

ITEM T9690L1 (0205)—MERS                    *(Page 1 of 7 pages)*

6/96
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

*0243131087978*

TITLEQUEST BOX 9877TC

**EXHIBIT**
**Z**

which has the address of                    **2486 ATWOOD TERRACE**
                                                    [Street]

**COLUMBUS**          , Ohio          **43211**          ("Property Address");
    [City]                                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1.    **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
    2.    **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).
    3.    **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:
    FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;
    SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;
    THIRD, to interest due under the Note;

**OHIO FHA MORTGAGE**

ITEM T9690L2 (0705)—MERS          *(Page 2 of 7 pages)*          To Order Call: 1-800-530-9393 ☐ Fax: 616-791-1131

GREATLAND ■

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

OHIO FHA MORTGAGE

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8.   Fees.** Lender may collect fees and charges authorized by the Secretary.

**9.   Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within **eight months** from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **eight months** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10.   Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11.   Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**OHIO FHA MORTGAGE**

ITEM T6690L4 (0205)— MERS                         *(Page 4 of 7 pages)*                         GREATLAND ■
To Order Call: 1-800-530-9393 ☐ Fax: 616-791-1131

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

OHIO FHA MORTGAGE

ITEM T9690L5 (0205)—MERS          (Page 5 of 7 pages)          GREATLAND ■
To Order Call: 1-800-530-9393 ☐ Fax: 616-791-1131

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**20. Certain Other Advances.** In addition to any other sum secured hereby, this Security Instrument shall also secure the unpaid principal balance of, plus accrued interest on, any amount of money loaned, advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office, _____ County, Ohio, for recording. Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrower should have paid as provided in this Security Instrument, it being intended by this paragraph 20 to acknowledge, affirm and comply with the provision of ORC 5301.233 of the Revised Code of Ohio.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider     ☐ Graduated Payment Rider     ☐ Growing Equity Rider

☐ Planned Unit Development Rider     ☐ Adjustable Rate Rider     ☐ Rehabilitation Loan Rider

☐ Non-Owner Occupancy Rider     ☐ Other [Specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 7 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Executed this 16th day of March . 2006

_Mary Richardson_ (Seal)
MARY RICHARDSON                                              -Borrower
  AKA MARY L. RICHARDSON

_____ (Seal)                            _____ (Seal)
                          -Borrower                                                   -Borrower

_____ (Seal)                            _____ (Seal)
                          -Borrower                                                   -Borrower

_____ (Seal)                            _____ (Seal)
                          -Borrower                                                   -Borrower

NOT A CERTIFIED COPY

State of    Ohio
County of   Franklin

The foregoing instrument was acknowledged before me this 16th day of March, 2006       (date) by

Mary Richardson, AKA MARY L. RICHARSON

                                                    (name of person(s) acknowledged).

_Christine M Tasch_
                                                                        Notary Public

My commission expires:

This instrument was prepared by:                [Name]

Taylor, Bean & Whitaker Mortgage Corp.

                                    CHRISTINE M. TASCH
                                    Notary Public, State of Ohio
                                    My Comm. Expires Aug. 1, 200?

OHIO FHA MORTGAGE

ITEM T9090L7 (0205)—MERS          (Page 7 of 7 pages)

                                            GREATLAND ■
                          To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

**Exhibit A**

Situated in the State of Ohio, County of Frankin and in the City of Columbus:

Being Lot Number Five (5) of Loretta Addition, as the same is numbered and delineated upon the recorded plat thereof, of record in Plat Book 24, page 18, Recorder's Office, Franklin County, Ohio.

PARCEL ID #010-097278
PROPERTY ADDRESS: 2486 Atwood Terrace, Columbus, Ohio 43211



201208300127753
Pgs: 2  $48.00   T2012005442
08/30/2012 11:35AM MLJOHN UMPLEB
Daphne Hawk
Franklin County Recorder

# TRANSFER ON DEATH AFFIDAVIT
## OF
# MARY L. RICHARDSON

KNOW ALL MEEN BY THESE PRESENTS, that, MARY L. RICHARDSON, DIVORCED AND NOT REMARRIED, being first duly sworn, does, pursuant to ORC 5302.22, 5302.222 and 5302.23, hereby verifies that she, MARY L. RICHARDSON, is the owner of record in fee simple of the entire interest in 2486 Atwood Terrace, Columbus, Ohio 43211, the legal description being set forth below and does hereby affirm that the below described real estate shall transfer on the death of MARY L. RICHARDSON, DIVORCED AND NOT REMARRIED to JONEDDA CURLEY, MARRIED, WHO IS HEREBY DESIGNATED MY BENEFICIARY pursuant to ORC Section 5302.23, the following described real estate:

Situated in the State of Ohio, County of Franklin, City of Columbus, and bounded and described more specifically as:

Being Lot Number Five (5) of the Loretta Addition, as the said Lot is numbered and delineated upon the recorded plat thereof, of record in Plat Book 24, page 18, Recorder's Office, Franklin County, Ohio.

Subject to liens, mortgages, conditions, restrictions, highway right-a-ways, easements, zoning restrictions, if any and real estate taxes after date of transfer.

Street Address: 2486 Atwood Terrace,
            Columbus, Ohio 43211

**TAX PARCEL NUMBER:** 010-097278  (The tax mailing address of the property of the property shall not change)

Prior Instrument reference: Official Record 27895 F-18 and Deed Vol. 3263, page 503

IN WITNESS WHEREOF, the Affiant, **MARY L. RICHARDSON,**



EXHIBIT
3

**UNMARRIED,** has set her hand to this Transfer on Death Affidavit on the ___27___ day of August, 2012.

SIGNED AND ACKNOWLEDGED BY:

**MARY L. RICHARDSON, AFFIANT**

**STATE OF OHIO**
**COUNTY OF FRANKLIN, S.S.:**

BE IT REMEMBERED, that on the ___27___ day of August, 2012, before me, a Notary Public, in and for the State of Ohio, personally came, **MARY L. RICHARDSON,** divorced and not remarried, the Affiant in the foregoing Transfer on Death Affidavit, and acknowledged the signing thereof to be her free, voluntary act and deed.

IN TESTIMONY THEREOF, I have hereunto subscribed my name and affixed my seal on this date first written above.

Notary Public

THIS INSTRUMENT PREPARED BY:
**JOHN I. UMPLEBY**
**ATTORNEY AT LAW**
SUP. CT. #0033472
2444 OTTAWA DR.
COLUMBUS, OHIO 43229
(614) 475-4493
(614) 598-3516

201302150027594
Pgs: 3    $36.00    T20130014626
02/15/2013 4:04PM    MLJOHN I UMPL
Terry J. Brown
Franklin County Recorder

TRANSFERRED

FEB 1 5 2013

CLARENCE E. MINGO II
AUDITOR
FRANKLIN COUNTY, OHIO

901950
CONVEYANCE TAX EXEMPT

CLARENCE E. MINGO II
FRANKLIN COUNTY AUDITOR

# AFFIDAVIT OF CONFIRMATION OF JONEDDA CURLEY SURVIVING BENEFICIARY

KNOW ALL MEN BY THESE PRESENTS, THAT, JONEDDA CURLEY, a.k.a JON EDDA CURLEY, MARRIED, AFFIANT, BEING FIRST DULY SWORN, DOES, PURSUANT TO O.R.C. 5302.222, HEREBY CONFIRM THE FOLLOWING:

1. That MARY L. RICHARDSON, divorced and not remarried, executed a Transfer on Death Affidavit on August 27, 2012, in which JONEDDA CURLEY, married, was designated her Transfer on Death Beneficiary of the real estate located at 2486 Atwood Terrace, Columbus, Ohio 43211 and more specifically described below.

2. That the Transfer on Death Affidavit of Mary L. Richardson was filed for record with the Franklin County Recorder on August 30, 2012, and recorded as Instrument Number 201208300127753, Franklin County Recorders Office, Franklin County, Columbus, Ohio.

3. That Mary L. Richardson, the deceased owner, died on October 17, 2012 and a Certified Copy of her Death Certificate is attached hereto.

4. That I, Jonedda Curley, aka Jon Edda Curley, the Transfer on Death Beneficiary's address is 2486 Atwood Terrace, Columbus, Ohio 43211.

5. That Mary L. Richardson did not receive Medicaid nor is her estate subject to the Medicaid estate recovery program.

6. That the legal description of the real estate specified herein is as follows:

    Situated in the State of Ohio, County of Franklin, City of Columbus, and bounded and described more specifically as:

    Being Lot Number Five (5) of the Loretta Addition, as the said Lot is numbered and delineated upon the recorded plat thereof, of record in Plat Book 24, page 18, Recorder's Office, Franklin County, Ohio.



EXHIBIT
4

Subject to liens, mortgages, conditions, restrictions, highway right-a-ways, easements, zoning restrictions, if any and real estate taxes after date of transfer.

Street Address: 2486 Atwood Terrace, Columbus, Ohio 43211

**TAX PARCEL NUMBER: 010-097278**

Prior Instrument reference: Instrument #201208300127753, Official Record 27895 F-18 and Deed Vol. 3263, page 503

IN WITNESS WHEREOF, the Transfer on Death Beneficiary, Jonedda Curley, aka Jon Edda Curley, married, Affiant herein, has set her hand to this Affidavit of Confirmation on the 7 of February, 2013.

Signed and Acknowledged by:

_____

**JONEDDA CURLEY, aka JON EDDA CURLEY**
Transfer on Death Beneficiary

**STATE OF OHIO**
**COUNTY OF FRANKLIN, S.S.:**

BE IT REMEMBERED, that on the 7 day of February, 2013, before me, a Notary Public, in and for the State of Ohio, personally came, JONEDDA CURLEY aka JON EDDA CURLEY, MARRIED, the Affiant in the foregoing Affidavit of Confirmation, and acknowledged the signing thereof to be her free, voluntary act and deed.

IN TESTIMONY THEREOF, I have hereunto subscribed my name and affixed my seal on the date first written above.

_____
NOTARY PUBLIC

**THIS INSTRUMENT PREPARED BY:**

**JOHN I. UMPLEBY**
**ATTORNEY AT LAW**
**Sup. Ct. #0033472**
**330 Fairway Dr.**
**Columbus, Ohio 43214**
**(614) 598-3516**

JOHN I. UMPLEBY, Attorney at Law
Notary Public, State of Ohio
My Commission Expires Has No Expiration Date
Section 147.03 R.C.

Reg. Dist. No.    25                    Ohio Department of Health
Primary Reg. Dist. No. 2501             VITAL STATISTICS               State File No.
Registrar's No. 2017009107              CERTIFICATE OF DEATH
                                        Type or print in permanent blue or black ink

**DECEDENT**

1. Decedent's Legal Name (include AKA's if any) (First, Middle, LAST, suffix)
MARY LOUISE RICHARDSON
2. Sex: Female
3. Date of Death (Mo/Day/Year): October 17, 2012

4. Social Security Number: 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
5a. Age (Years): 64
5b. Under 1 Year Months / Days
5c. Under 1 day Hours / Minutes
6. Date of Birth (Mo/Day/Year): March 27, 1948
7. Birthplace (City and State or Foreign Country): NEWARK, OHIO

8a. Residence State: OHIO
8b. County: FRANKLIN
8c. City or Town: COLUMBUS
8e. Apt. No.
8f. Zipcode: 43211
8g. Inside City Limits? Yes

8d. Street and Number: 2486 Atwood Terrace

9. Ever in US Armed Forces? No
10. Marital Status at Time of Death: Divorced (and not remarried)
11. Surviving Spouse's Name (if wife, give name prior to first marriage)

12. Decedent's Education: ASSOCIATE DEGREE (E.G., AA, AS)
13. Decedent of Hispanic Origin: No
14. Decedent's Race: Black

15. Father's Name: GUY S BROWN
16. Mother's Name (prior to first marriage): SUSAN WILLIAMS

17a. Informant's Name: JON EDDA CURLEY
17b. Relationship to Decedent: Daughter
17c. Mailing Address: (Street and Number, City, State, Zip Code) 550 Myrtle Ave.
COLUMBUS, OHIO 43211

18a. Place of Death: Decedent's Home
18b. Facility Name (if not institution, give street & number): 2486 Atwood Terrace
18c. City or Town, State and Zip Code: COLUMBUS, OH 43211
18d. County of Death: FRANKLIN

**REGISTRAR / DISPOSITION**

19. Signature of Funeral Service Licensee or Other Agent: _Kenneth Deibard_
20. License Number: 008588
21. Name and Complete Address of Funeral Facility: SCHOEDINGER NORTH CHAPEL

22a. Method of Disposition: Cremation
22b. Date of Disposition: October 31, 2012
5554 KARL RD
COLUMBUS, OH 43229

22c. Place of Disposition (Name of Cemetery, Crematory, or other place): Schoedinger/Columbus Crematory
22d. Location (City/Town and State): COLUMBUS, OH

23. Registrar's Signature: _Sandra Taylor_
24. Date Filed: NOV 01 2012

25a. Name of Person Issuing Burial Permit: KOPP, NELSON
25b. District No.: 2500
25c. Date Burial Permit Issued: 10-30-2012

**CERTIFIER**

26a. Certifier (Check only one): [X] Certifying Physician / [ ] Coroner
To the best of my knowledge, death occurred at the time, date, and place, and due to the cause(s) and manner stated.
On the basis of examination and/or investigation, in my opinion, death occurred at the time, date, and place; and due to the cause(s) and manner stated.

26b. Time of Death: 0705 AM
26c. Date Pronounced Dead (Mo/Day/Year): 10/17/12
26d. Was case referred to coroner? No

26e. Signature and Title of Certifier: _____ MD
26f. License number: 35.074706
26g. Date Signed: 10/18/12

27. Name (Last, First, Middle) and Address of Person who Completed Cause of Death:
OTTERSON, GREGORY ALAN, 320 W 10TH AVENUE COLUMBUS, OH 43210

**CAUSE OF DEATH**

28. Part I. Enter the disease, injuries, or complications that caused the death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock, or heart failure. List only one cause on each line. Type or print in permanent blue or black ink.

Immediate Cause (Final disease or condition resulting in death)
a. Lung Cancer    Approximate Interval Between Onset and Death: 3 months

Sequentially list conditions, if any, leading to immediate cause.
b. Due to (or as consequence of)

Enter Underlying Cause (Disease or Injury that initiated events resulting in death)
c. Due to (or as consequence of)
d. Due to (or as consequence of)

Part II. Other significant conditions contributing to death but not resulting in the underlying cause given in Part I.
COPD

29a. Was An Autopsy Performed? [ ] Yes [X] No
29b. Were Autopsy Findings Available Prior To Completion Of Cause of Death? [ ] Yes [ ] No [X] Not Applicable

30. Manner of Death: [X] Natural [ ] Homicide
[ ] Accident [ ] Pending Investigation
[ ] Suicide [ ] Could not be determined

31. Did Tobacco Use Contribute to Death? [X] Yes [ ] Unknown [ ] No [ ] Probably

32. If Female, Pregnancy Status:
[ ] Not pregnant within past year
[ ] Pregnant at time of death
[ ] Not pregnant, but pregnant within 42 days of death
[ ] Not pregnant, but pregnant 43 days to 1 year before death
[ ] Unknown if pregnant within the past year

33a. Date of Injury (Mo/Day/Year)
33b. Time of Injury
33c. Place of Injury (e.g., Decedent's home, construction site, restaurant, wooded area)
33d. Injury at Work? [ ] Yes [ ] No

33e. Location of Injury (Street and Number and Rural Route Number, City and State)

33f. Describe How Injury Occurred:
33g. If Transportation Injury, Specify: [ ] Driver/Operator [ ] Pedestrian [ ] Passenger [ ] Other:

HEA 2724  Rev. 01/07


I HEREBY CERTIFY THIS DOCUMENT IS AN EXACT COPY OF THE RECORD ON FILE WITH THE OHIO DEPARTMENT OF HEALTH.

09-112834099

STATE REGISTRAR

REV. 6/2009

NOT A CERTIFIED COPY

## IN THE COURT OF COMMON PLEAS
## FRANKLIN COUNTY, OHIO

Wells Fargo Bank, NA

     Plaintiff,

vs.

Jonedda Curley, AKA Jon Edda Curley, et al.

    Defendants.

Case No. 13 CV 007333

Judge Julie M. Lynch

**DECISION AND ENTRY DENYING MOTION OF PLAINTIFF
WELLS FARGO BANK, NA FOR SUMMARY JUDGMENT,
Filed March 17, 2014**

**and**

**DECISION AND ENTRY GRANTING CROSS-MOTION OF DEFENDANT
JONEDDA CURLEY FOR SUMMARY JUDGMENT,
Filed March 31, 2014**

**LYNCH, J.**

This matter is before the Court upon the parties' cross-motions for summary judgment filed March 17, 2014 by Plaintiff Wells Fargo Bank, NA ("Plaintiff") and March 31, 2014 by Defendant Jonedda Curley, aka Jon Edda Curley ("Defendant"), respectively. Both motions are fully briefed and the Court has considered all memoranda submitted.[1]

Plaintiff initiated this foreclosure action against Defendant on July 3, 2013. Plaintiff's complaint asserts that it is the holder of a promissory note and mortgage executed by Defendant's predecessor in interest Mary L. Richardson, that the note and mortgage are in default of payment, and that Plaintiff has accelerated the note and is

[1] The Court has denied Plaintiff's motion to strike the reply of Defendant via separate order dated July 23, 2014.



0C311 - G86

entitled to proceed to foreclosure. Attached to the Complaint are copies of the underlying promissory note and mortgage, as well as a copy of the assignment by which Plaintiff claims to have obtained its interest in these documents.

On August 1, 2013, Defendant, then acting *pro se*, filed a Request for an order referring the case to mediation and an extension of time in which to answer Plaintiff's Complaint, which the Court granted on August 9, 2013. On December 3, 2013 a Mediation Outcome Report was filed by the Franklin County Foreclosure Mediation Project indicating there was no resolution by the parties. Subsequently, on January 15, 2014 and with leave of Court, Defendant, acting through counsel, filed her Answer to the Complaint. In her Answer Defendant generally denied the allegations contained in paragraph five of the Complaint that "[t]he Note and Mortgage are in default [and] Plaintiff has satisfied all conditions precedent and has declared the entire balance due and payable." (Answer ¶5.) Defendant also set forth affirmative defenses to Plaintiff's claims, including that "Plaintiff failed to comply fully with the servicing and loss mitigation initiatives mandated by HUD prior to filing this foreclosure case [and] [s]aid failure bars Plaintiff from foreclosing on the property as a matter of law." (Answer ¶16.)

The parties have since filed cross-motions for summary judgment. Plaintiff has moved for judgment asserting that it has performed all conditions precedent and otherwise taken all actions necessary to accelerate the note and proceed to foreclosure. Defendant filed a memorandum contra summary judgment and a cross-motion for summary judgment. Defendant disputes Plaintiff's right to accelerate the note and proceed to foreclosure and concurrently moves for summary judgment against Plaintiff on the basis that it failed to follow HUD guidelines by (1) providing the requisite notice

2

pursuant to Title 24 C.F.R. §203.602 and (2) conducting a face-to-face interview (or making a reasonable effort to do so) pursuant to Title 24 C.F.R. §203.604(b) prior to filing its foreclosure action.

In support of her cross-motion for judgment, Defendant submits the Transfer on Death Affidavit of Mary L. Richardson and her own affidavit attesting to the lack of the aforementioned notice and face-to-face meeting or any efforts to conduct one. Defendant further cites to multiple decisions standing for the proposition that in order to accelerate an FHA note and proceed to foreclosure the plaintiff must first comply with the applicable FHA/HUD regulations. The decisions upon which Defendant relies include a 1991 decision from the Tenth District Court of Appeals (*GMAC Mortg. Of Pennsylvania v. Gray*, 10th Dist, No. 91AP-650, Dec. 10, 1991) and decisions from the First, Second, Fourth, Fifth and Ninth District Courts of Appeals. In addition, Defendant has included copies of decisions from several other foreclosure cases before this Court (albeit from cases pending before different Judges) denying summary judgment in favor of a Plaintiff and/or granting summary judgment in favor of a Defendant based on the failure of the Plaintiff to adhere to the relevant FHA/HUD regulations prior to accelerating payment on a note and proceeding to foreclosure.

In response to Defendant's cross-motion for summary judgment, Plaintiff argues that the FHA/HUD regulations identified by Defendant are inapplicable to her because she is not a "mortgagor" as contemplated under the regulations. More specifically, Plaintiff asserts that since Defendant acquired her interest in the property at issue via a Transfer on Death versus by being a signatory to the Note and/or Mortgage, she is not a "mortgagor" as defined by Title 24 C.F.R. §203.251(e). Accordingly, argues Plaintiff, it

3

was under no obligation to either provide notice or conduct (or make reasonable efforts to conduct) a face-to-face meeting prior to initiating foreclosure proceedings.

Defendant refutes this argument of Plaintiff by pointing to various materials outside of the actual Code of Federal Regulations wherein HUD and the Consumer Financial Protection Bureau ("CFPB") have made efforts to define "mortgagor" for purposes of the FHA-Home Affordable Modification Program ("FHA-HAMP") and issue rules and regulations pertaining to the applicability of FHA-HAMP to successors in interest, including "Mortgagee Letter 2009-23" issued by HUD, 78 FR 10695, and CFPB Bulletin 2013-12.[2] Defendant contends that these materials coupled with the purpose and policy behind the FHA/HUD regulations make it clear that Defendant is a "mortgagor" for purposes of the regulations and therefore Plaintiff was required to adhere to those regulations prior to filing its action in foreclosure.

Summary judgment is provided for and controlled by Civil Rule 56. When a summary judgment motion is properly supported by evidence and demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriately granted. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327; Civ.R. 56. Once this initial burden is satisfied, the party opposed to the motion may not sit idly by, but must respond with evidence to demonstrate that a genuine issue of material fact remains for adjudication. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292-293. If the party resisting summary judgment fails to respond in such a manner, a granting of summary judgment for the moving party may be appropriate. *Id.*

---

[2] As noted previously, the Court has already denied Plaintiff's motion to strike Defendant's filing submitting these various outside materials.

4

Franklin County Ohio Clerk of Courts of the Common Pleas- 2015 Feb 10 9:45 AM-13CV007333

0C311 - G89

It is undisputed that the underlying mortgage loan is federally insured and subject to HUD guidelines. Among those guidelines are certain procedures that a mortgagee must follow before proceedings with a foreclosure, including 1) such as conducting a face-to-face interview with the mortgagor. Specifically, 24 C.F.R. §203.604(b) provides, in pertinent part:

> The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. ***

Continuing, 24 C.F.R. §203.604(c) waives the face-to-face meeting requirement only if:

(1) The mortgagor does not reside in the mortgaged property,

(2) The mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either,

(3) The mortgagor has clearly indicated that he will not cooperate in the interview,

(4) A repayment plan consistent with the mortgagor's circumstances is entered into to bring the mortgagor's account current thus making a meeting unnecessary, and payments thereunder are current, or

(5) A reasonable effort to arrange a meeting is unsuccessful.

It is error to grant summary judgment where there are genuine issues of material fact regarding a mortgagee's compliance with HUD servicing requirements. *See GMAC Mtge. of Pennsylvania v. Gray* (December 10, 1991), 10th Dist. No. 91AP-650; *U.S. Bank, N.A. v. Detweiler*, 191 Ohio App.3d 464, 2010 Ohio 6408 (5th Dist.). In fact, Ohio Courts have held that summary judgment is appropriate in favor of the defendant when the mortgagee has failed to comply with 24 C.F.R. §203.604. *See Wells Fargo v. Phillabaum*, 192 Ohio App.3d 712, 2011 Ohio 1311 (4th Dist.); *Wells Fargo Bank, N.A. v. Isaacs*, 1st Dist. No. C-100111, 2010 Ohio 5811, ¶11 ("***we conclude that, under the

5

0C311 - G90

HUD regulations, Wells Fargo could not commence foreclosure proceedings against Isaacs until it had complied with the regulations. The trial court properly granted summary judgment to Isaacs."). Thus, in the case at hand, the issue is whether or not Defendant is a "mortgagor" for purposes of the HUD/FHA regulations.

Neither Plaintiff nor Defendant has provided the Court with any case law specifically addressing whether or not a person who became an owner of property subject to an FHA mortgage by virtue of a Transfer on Death is a "mortgagor" for purposes of the regulations encompassed in 24 C.F.R. §203.602 and 24 C.F.R. §203.604. Furthermore, the Court has conducted its own independent research and has been unable to locate any such authority. Nevertheless, in reviewing and analyzing the various publications promulgated by HUD and CFPB which evidence efforts by these entities to define who is a "mortgagor" for purposes of the FHA-HAMP program – a program which is supposed to be discussed at the very face-to-face meeting which is mandated by 24 C.F.R. §203.604(b) with only certain specific exceptions – the Court finds as a matter of law that Defendant is a "mortgagor" for purposes of the regulations encompassed in 24 C.F.R. §203.602 and 24 C.F.R. §203.604. As such, prior to bringing its action in foreclosure, Plaintiff was required to provide Defendant with the requisite notice of default and conduct a face-to-face meeting as discussed above.

Defendant has submitted proper Civil Rule 56 evidence to substantiate her claim that Plaintiff failed to comply with HUD guidelines by conducting a face-to-face meeting with her or making a reasonable effort to do the same. Plaintiff, on the other hand, has failed to present evidence demonstrating a genuine issue of material fact remains for adjudication regarding this issue. Accordingly, Defendant is entitled to summary

6

judgment in her favor and her cross-motion for summary judgment is **GRANTED**; conversely, Plaintiff's motion for summary judgment is **DENIED**.

Based on the foregoing, the Court enters judgment in Defendant's favor and dismisses Plaintiff's complaint against her, without prejudice.  Costs to Plaintiff.

**This is a final appealable order and there is no just cause for delay.**

**IT IS SO ORDERED.**

Electronic copies to all counsel of record

**Direction to Clerk:**

**Pursuant to Civ.R.58(B), you are to serve notice of this judgment and its date of entry upon the journal to all parties not in default for failure to appear within three days of the judgment's entry upon the journal, and note the service in the appearance docket.**

Franklin County Ohio Clerk of Courts of the Common Pleas- 2015 Feb 10 9:45 AM-13CV007333

0C311 - G92

Franklin County Court of Common Pleas

**Date:**           02-10-2015

**Case Title:**     WELLS FARGO BANK NA -VS- JONEDDA CURLEY ET AL

**Case Number:**    13CV007333

**Type:**           DECISION/ENTRY

It Is So Ordered.

/s/ Judge Julie M. Lynch

Electronically signed on 2015-Feb-10    page 8 of 8

Franklin County Ohio Clerk of Courts of the Common Pleas- 2015 Feb 10 9:45 AM-13CV007333

0C311 - G93

Court Disposition

Case Number: 13CV007333

Case Style: WELLS FARGO BANK NA -VS- JONEDDA CURLEY ET
AL

Case Terminated: 18 - Other Terminations

Final Appealable Order: Yes

Motion Tie Off Information:

1. Motion CMS Document Id: 13CV0073332014-03-1799980000
   Document Title: 03-17-2014-MOTION FOR SUMMARY
   JUDGMENT
   Disposition: MOTION DENIED

2. Motion CMS Document Id: 13CV0073332014-03-3199980000
   Document Title: 03-31-2014-MOTION FOR SUMMARY
   JUDGMENT
   Disposition: MOTION GRANTED

Franklin County Ohio Clerk of Courts of the Common Pleas- 2015 May 08 10:52 AM-15CV003904

0C480 - W70

## IN THE COURT OF COMMON PLEAS
### FRANKLIN COUNTY, OHIO

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

| | |
|---|---|
| **Wells Fargo Bank, NA**<br>**3476 Stateview Boulevard**<br>**Fort Mill, South Carolina 29715** | Case No. _____ |
| | Judge _____ |
| **Plaintiff** | **COMPLAINT FOR FORECLOSURE** |
| vs. | |
| **Jonedda Curley, AKA Jon Edda Curley**<br>**2486 Atwood Terrace**<br>**Columbus, OH 43211** | |
| **Jane Doe, Name Unknown, the Unknown**<br>**Spouse (if any) of Jonedda Curley, AKA Jon**<br>**Edda Curley**<br>**2486 Atwood Terrace**<br>**Columbus, OH 43211** | |
| **Franklin County Treasurer**<br>**373 South High Street**<br>**17th Floor**<br>**Columbus, OH 43215** | |
| **Defendants.** | |

Now comes Plaintiff, Wells Fargo Bank, NA, who hereby alleges and asserts against the

Defendants as follows:

### Background

1.      Mary Richardson, AKA Mary L. Richardson executed the promissory note (the "Note")

that is the subject of this action.  A copy of the Note is attached hereto as Exhibit A.

15-011951_MEW



C2

Franklin County Ohio Clerk of Courts of the Common Pleas- 2015 May 08 10:52 AM-15CV003904

0C48O - W71

2.   Attached hereto as Exhibit B is a copy of the mortgage (the "Mortgage") that was validly

executed in connection with the execution of the Note. The parties to the Mortgage

intended that it attach to the entire fee simple interest in the property.

3.   The Mortgage was recorded March 27, 2006 as Instrument Number 200603270056687,

Franklin County, Ohio records.

4.   The Mortgage is a lien on the property (the "Property") described more fully in the

attached Mortgage.

5.   The Note and Mortgage are in default.  Plaintiff has satisfied conditions precedent and

declared the entire balance due and payable.

### COUNT ONE: BREACH OF NOTE

6.   Plaintiff incorporates each of the preceding allegations into Count One by reference.

7.   Mary Richardson, AKA Mary L. Richardson is deceased.  As a result, Plaintiff is not

seeking a personal judgment against the foregoing defendant but is seeking instead to

enforce its security interest.  Because the Note has been accelerated and is in default,

Plaintiff is entitled to recover from the sale of the Property the principal amount of

$72,741.29, plus interest on the outstanding principal amount at the rate of 6% per annum

from February 1, 2013, plus late charges and advances and all costs and expenses

incurred for the enforcement of the Note and Mortgage, except to the extent the payment

is prohibited by Ohio law.

8.   Plaintiff is a person entitled to enforce the Note.

### COUNT TWO: FORECLOSURE

9.   Plaintiff incorporates each of the preceding allegations into Count Two by reference.

15-011951_MEW

Franklin County Ohio Clerk of Courts of the Common Pleas- 2015 May 08 10:52 AM-15CV003904

0C480 - W72

10. The Mortgage is a valid and subsisting lien on the Property, subject only to any lien that may be held by the County Treasurer that has priority over the Mortgage as a matter of law.

11. The Mortgage was given to secure the Note.

12. Plaintiff is entitled to foreclose the Mortgage due to default. See Exhibit B, Exhibit C.

13. The Preliminary Judicial Report attached to this Complaint as Exhibit D refers to other persons, if any, who are named as defendants in this action.

14. The identity of Jane Doe, Name Unknown, the Unknown Spouse (if any) of Jonedda Curley, AKA Jon Edda Curley is unknown and could not be discovered by reasonable diligence.

## PRAYER FOR RELIEF

15. Plaintiff prays for the following relief:

- a finding of default on the note in the principal amount of $72,741.29, plus interest on the outstanding principal amount at the rate of 6% per annum from February 1, 2013, plus late charges and advances and all costs and expenses incurred for the enforcement of the Note and Mortgage except to the extent the payment is prohibited by Ohio law;

- a finding that the Mortgage is a valid and subsisting lien on the Property, subject only to any lien that may be held by the County Treasurer that has priority over the Mortgage as a matter of law;

- an order (1) foreclosing the equity of redemption and dower of all defendants named in this action, (2) requiring that the Property be sold free and clear of all

15-011951_MEW

Franklin County Ohio Clerk of Courts of the Common Pleas- 2015 May 08 10:52 AM-15CV003904

0C480 - W73

liens, interests, and dower, (3) requiring all defendants to set up their liens or

interest in the Property or be forever barred from asserting such liens or interests,

(4) requiring that the proceeds of the sale of the Property be applied to pay all

amounts due Plaintiff, and (5) granting Plaintiff all other relief, legal and

equitable, as may be proper and necessary, including, for example, a writ of

possession.

Respectfully submitted,

/s/ Kyle E. Timken

Kyle E. Timken (0071381)
Edward H. Cahill (0088985)
Michael E. Carleton (0083352)
Matthew P. Curry (0078306)
Manley Deas Kochalski LLC
P. O. Box 165028
Columbus, OH 43216-5028
Telephone: 614-222-4921
Fax: 614-220-5613
Email: ket@manleydeas.com
Attorney for Plaintiff

**\*Please note: The documents attached hereto may have been redacted to remove personal information and personal identifiers, such as financial account information, social security numbers, dates of birth, and similar information to further protect the privacy of borrowers and mortgagors.**

15-011951_MEW